Juan A. Portillo
NAME
H-80425
PRISON NUMBER

Centinela State Prison
CURRENT ADDRESS OR PLACE OF CONFINEMENT
P.O. Box 931 - D3-119L
Imperial, California 92251-0931
CITY, STATE, ZIP CODE

2254 ✓   1983
FILING FEE PAID
Yes ✓   No
IFP MOTION FILED
Yes   No ✓
COPIES SENT TO
Court ✓   ProSe

**FILED**

APR 1 6 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

JUAN PORTILLO                    ,
(FULL NAME OF PETITIONER)
                  PETITIONER

v.

VICTOR M. ALMAGER, Warden      ,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

                  RESPONDENT

and

_____ ,

The Attorney General of the State of
California, Additional Respondent.

Civil No. __'08 CV 0706 LAB JMA__
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: _____
   Superior Court of California, Los Angeles County

2. Date of judgment of conviction: May 14, 1993

3. Trial court case number of the judgment of conviction being challenged: VA023876

4. Length of sentence: Life

CIV 68 (Rev. Dec. 1998)

5. Sentence start date and projected release date: Start date: June 28, 1993; Projected release date: Currently unknown

6. Offense(s) for which you were convicted or pleaded guilty (all counts): Attempted Murder
///
///

7. What was your plea? (CHECK ONE)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury ☒
   (b) Judge only ☐

9. Did you testify at the trial?
   ☐ Yes ☐ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☐ Yes ☒ No

11. If you appealed in the **California Court of Appeal**, answer the following:
    (a) Result: _____
    (b) Date of result, case number and citation, if known: _____

    (c) Grounds raised on direct appeal: _____
    _____
    _____
    _____

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
    (a) Result: _____
    (b) Date of result, case number and citation, if known: _____

    (c) Grounds raised: _____
    _____
    _____
    _____

13. If you filed a petition for certiorari in the <u>United States Supreme Court</u>, please answer the following with respect to that petition:

    (a) Result: _____

    (b) Date of result, case number and citation, if known: _____
       _____

    (c) Grounds raised: _____
       _____
       _____
       _____

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Superior Court</u>?
    ☒ Yes  ☐ No

15. If your answer to #14 was "Yes," give the following information:

    (a) <u>California Superior Court</u> Case Number: VA023876

    (b) Nature of proceeding: Habeas Corpus Petition
       ///

    (c) Grounds raised: The Board Of Parole Hearings Violated Petitioner's Due Process Right, Because Its Decision Failed To Reflect Consideration Of Petitioner's Institutional Behavior As A Circumstance Tending To Demonstrate His Suitability For Parole

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
       ☐ Yes  ☒ No

    (e) Result: Petition Denied

    (f) Date of result: August 3, 2007

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Court of Appeal</u>?
    ☒ Yes  ☐ No

17. If your answer to #16 was "Yes," give the following information:

    (a) **California Court of Appeal** Case Number: BA201335

    (b) Nature of proceeding: Habeas Corpus Petition

        ///

    (c) Grounds raised: The Board Of Parole Hearings Violated Petitioner's Due Process Right, Because Its Decision Failed To Reflect Consideration Of Petitioner's Institutional Behavior As A Circumstance Tending To Demonstrate His Suitability For Parole

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes ☒ No

    (e) Result: Petition Denied

    (f) Date of result: August 22, 2007

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☒ Yes ☐ No

19. If your answer to #18 was "Yes," give the following information:

    (a) **California Supreme Court** Case Number: S156142

    (b) Nature of proceeding: Habeas Corpus Petition

        ///

    (c) Grounds raised: The Board Of Parole Hearings Violated Petitioner's Due Process Right, Because Its Decision Failed To Reflect Consideration Of Petitioner's Institutional Behavior As A Circumstance Tending To Demonstrate His Suitability For Parole

        ///

    (d) Did you receive an evidentiary hearing on your petition, application or motion?

        ☐ Yes ☒ No

    (e) Result: Petition Denied

    (f) Date of result: February 27, 2008

20. If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

Not Applicable

_____

_____

_____

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?

☒ Yes ☐ No    (IF "YES" SKIP TO #22)

    (a) If no, in what federal court was the prior action filed? _____

        (i) What was the prior case number? _____

        (ii) Was the prior action (CHECK ONE):

            ☐ Denied on the merits?

            ☐ Dismissed for procedural reasons?

        (iii) Date of decision: _____

    (b) Were any of the issues in this current petition also raised in the prior federal petition?

        ☐ Yes ☐ No

    (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?

        ☐ Yes ☐ No

**CAUTION:**

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: THE BOARD OF PAROLE HEARINGS VIOLATED PETITIONER'S DUE PROCESS RIGHT, BECAUSE ITS DECISION FAILED TO REFLECT CONSIDERATION OF PETITIONER'S INSTITUTIONAL BEHAVIOR AS A CIRCUMSTANCE TENDING TO DEMONSTRATE HIS SUITABILITY FOR PAROLE

Supporting FACTS (state *briefly* without citing cases or law) Petitioner contends that the Board of Parole Hearings (hereinafter "BPH") abused its discretion in that, the BPH clearly appears to find Petitioner unsuitable for parole based solely on his commitment offense. On that basis, the BPH found that Petitioner would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. Moreover, the BPH characterized his commitment offense as having been carried out in a "calculated manner." (Exhibit A).

In the psychological evaluation conducted by Dr. Nancy Petasa on June 22, 2003, the evaluation is supportive of release in that she states, "it appears that your level of dangerousness is low at this time." Clearly, the BPH ignored this evidence of Petitioner's rehabilitation, and continued to rely on the unchanging factors of his commitment offense.

The BPH is the administrative agency authorized to grant parole and fix release dates. The BPH exercises wide discretion in fixing an inmate's term and seeting his parole date. The BPH enjoys broad but [not] absolute discretion in parole-related matters.

Petitioner contends that the BPH abused its discretion when it arbitrarily denied parole suitability. The BPH's conclusion that Petitioner was dangerous if released into society, clearly conflicts with Dr. Petsas' report. To begin, Dr. Petsas reported that Petitioner made poor choices in

Did you raise **GROUND ONE** in the California Supreme Court?
☐ Yes ☒ No.

[CONTINUED ON PAGE –6(A)–]

CIV 68 (Rev. Dec. 1998)     -6-     K:\COMMON\FORMS\CIV-68

life. She also stated, "... he feels remorseful and thanks [sic] God that no one lost a life." She further stated, "Mr. Portillo's understanding and insight. He understands how his action can impact himself and pthers." (Exhibit B). Contrary to the BPH's findings, this stands to demonstrate that Petitioner has grown to have remarkable insight by attending numerous self-help groups designed to assist him in gaining insight into the participation in the commitment offense.

The BPH next appears to express its concern regarding Petitioner attempting to mislead the panel about his involvement in the commitment offense. (Exhibit A). This could not be further from the truth. Beginning with his initial Board Hearing in 2001, Petitioner has consistently denied firing the gun. (Exhibit C).

Petitioner contends that now that he has obtained proof that he did not shoot the gun at the security guards (Exhibit D), the BPH has refused entertain the exculpatory evidence. (Exhibit E). This action taken by the BPH is clearly contrary to the Due Process Caluse of the Fourteenth Amendment to the United States Constitution.

For the foregoing reasons, Petitioner respectfully requests this Honorable Court grant him relief.

* * * * *

**(b) GROUND TWO:** _____ Not Applicable _____

_____

_____

**Supporting FACTS** (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND TWO in the California Supreme Court?**
☐ Yes ☐ No.

**(c) GROUND THREE:** _____ Not Applicable _____

_____

_____

**Supporting FACTS** (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND THREE in the California Supreme Court?**

☐ Yes ☐ No.

(d) **GROUND FOUR:** _____ Not Applicable _____

_____

_____

**Supporting FACTS** (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND FOUR in the California Supreme Court?**

☐ Yes ☐ No.

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes  ☒ No

24. If your answer to #23 is "Yes," give the following information:

   (a)  Name of Court: _____

   (b)  Case Number: _____

   (c)  Date action filed: _____

   (d)  Nature of proceeding: _____

   _____

   (e)  Grounds raised: _____

   _____

   _____

   _____

   _____

   (f)  Did you receive an evidentiary hearing on your petition, application or motion?
   ☐ Yes  ☐ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

   (a)  At preliminary hearing: _____ Not Applicable _____

   _____

   (b)  At arraignment and plea: _____ Not Applicable _____

   _____

   (c)  At trial: _____ Not Applicable _____

   _____

   (d)  At sentencing: _____ Not Applicable _____

   _____

   (e)  On appeal: _____ Not Applicable _____

   (f)  In any post-conviction proceeding: _____ Not Applicable _____

   _____

   (g)  On appeal from any adverse ruling in a post-conviction proceeding: Not Appliacble

   _____

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☐ Yes  ☒ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes  ☒ No

   (a) If so, give name and location of court that imposed sentence to be served in the future:

   _____

   (b) Give date and length of the future sentence: _____

   _____

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   ☐ Yes  ☐ No

28. Date you are mailing (or handing to a correctional officer) this Petition to this court: _____

_____

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

                                   Not Applicable
                    _____
                         SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_____          _____
        4/1/08
         (DATE)                              SIGNATURE OF PETITIONER

# EXHIBIT A

82

CALIFORNIA BOARD OF PAROLE HEARINGS

D E C I S I O N

1

2

3     **DEPUTY COMMISSIONER MUGA:** Okay. We're back on

4     the record.

5     **PRESIDING COMMISSIONER BIGGERS:** Okay. Let the

6     record reflect that everyone that was in the room prior

7     to us going into deliberations are now back in the

8     room. Before I give the decision, Mr. Portillo,

9     there's something that I need to pass onto you. In

10    your last hearing in 2005, you were told certain

11    things, and one of them was you need to reconsider your

12    involvement in the crime and based on what was in the

13    record, and yet you came back today with a slightly

14    different version, and that's creating a problem for

15    you, sir, because you're doing a lot of things. Now,

16    you have gone on the record and given different

17    versions from the time that you were arrested to the

18    time that you've been here to the time that you have

19    now, and you have been convicted of this crime. And

20    regardless of what you're saying and the way, and I

21    don't know if it's because you don't understand some of

22    the questions that I even I was asking or what the

23    District Attorney was asking, before your next hearing,

24    I'm going to recommend that they have an interpreter in

25    here that can explain things to you a little bit better

26    because the way you're coming across, it's like

27    **JUAN PORTILLO    H-80425    DECISION PAGE 1    12/28/2006**

83

1  whenever a certain question is asked about the crime,

2  you have a tendency to not to want to talk about it.

3  You start kind of moving in different directions, and

4  that's hurting you, sir, to be honest with you.  That's

5  really creating a problem like you are still minimizing

6  your involvement with the crime, and I will cover that

7  a little later on as we go through.

8          DEPUTY COMMISSIONER MUGA:  Can I ask the

9  District Attorney to turn off his mic, please?

10          PRESIDING COMMISSIONER BIGGERS:  Okay.  Thank

11  you.

12          DEPUTY COMMISSIONER MUGA:  Thank you.

13          PRESIDING COMMISSIONER BIGGERS:  Now, in the

14  matter of Mr. Juan Portillo, CDC number H-80425, the

15  Panel has reviewed all information received from the

16  public and relied on the following circumstances to

17  conclude that the prisoner is not suitable for parole

18  and would pose an unreasonable risk of danger to

19  society or a threat to public safety if released from

20  prison.  It's going to be another one-year denial, sir.

21  And, again, the factors that we looked at, this offense

22  was carried out in a calculated manner and was a result

23  of the fact that you and your codefendants were tossed

24  out of a bar after an altercation.  You left the bar

25  with your codefendants -- I'm sorry, let me back up.

26  There was a fight in the bar.  You and your co-

27  **JUAN PORTILLO    H-80425    DECISION PAGE 2    12/28/2006**

# EXHIBIT  B

52

1  the doctor gives you a GAF or a Global Assessment of

2  Functioning of 80. That's on a scale from zero to 100,

3  100 being the best. So 80 is a really relatively high

4  school. The doctor thought you were functioning pretty

5  high. Okay. Now, I'm just going to kind of read some

6  excerpts from the doctor's report. I'm looking at the

7  last page under the review of life crime. The doctor

8  writes:

9      "He had been drinking heavily since 10:00

10      a.m., and admits his memory may have been

11      quote not that good unquote. He

12      continues to deny firing the gun, but at

13      the same time, he feels remorseful and

14      thanks God that no one lost a life. He

15      admits not acting responsibly and is

16      sorry for all the pain he has caused

17      others. Quote 'I will never use any

18      substances again. My mind is for doing

19      good things with my life and not hurt my

20      neighbor or take a life. I have

21      continued my program in AA slash NA, and

22      I will help others when they need me,'

23      close quote."

24      The next paragraph, assessment of

25  dangerousness, the doctor writes:

26      "His ability to refrain from disciplinary

27      conduct while in prison is indicative of

53

1        Mr. Portillo's understanding and insight.

2        He understands how his actions can impact

3        himself and others.  His genuine interest

4        in having a clean life, free of crime,

5        with family and the desire to be

6        positive.  Appears that his level of

7        dangerousness is low at this time."

8        In the last paragraph, the doctor writes, under

9        clinical observation, comments, and recommendations:

10        "Mr. Portillo admits to alcoholic

11        dependence and has made every effort by

12        continuing to partake in AA slash NA.

13        All is documented in his file.  He has

14        acquired computer skills and has a good

15        command of the English language.  If

16        granted a release, he needs to continue

17        in a outpatient drug rehabilitation

18        program.  He also needs to continue his

19        education.  Even though he has many

20        goals, one remains constant.  Quote 'I

21        want to contribute and to learn to be a

22        better person.  I want to see my children

23        again.' Close quote.  His ability to

24        maintain sobriety is the best predictor

25        of the living successfully in a

26        non-violent way in our society."

27        And those would be the highlights that I

# EXHIBIT  C

11

1   instructed the prisoner -- whenever I'm
2   talking, please don't interrupt me until I
3   finish the question, while you're talking.
4          PRESIDING COMMISSIONER ANGELE:  Okay,
5   thank you.  And they drove off.
6          INTERPRETER GARCIA:  Toyota -- a white
7   Toyota, did you say?
8          PRESIDING COMMISSIONER ANGELE:  A
9   white, two door, Toyota.
10          PRESIDING COMMISSIONER ANGELE:  The
11   inmate's companion, Hernandez, drove the
12   vehicle.  Inmate was in the front passenger
13   seat and the inmate's companion, (inaudible) --
14   or Ruiz --
15          INTERPRETER GARCIA:  And who,
16   (inaudible)?
17          PRESIDING COMMISSIONER ANGELE:  And
18   Ruiz, was in the backseat.  About 20 minutes
19   later, Pareves and Briseno saw the white Toyota
20   coming down the alley behind the bar.  The
21   automobile stopped and the inmate got out.  He
22   took a shotgun from the automobile and began
23   shooting at Pareves and Briseno.  The first
24   shot hit a truck about a foot from Briseno and
25   he felt the breeze from the bullet as it passed
26   by him.  Pareves pushed Briseno under the truck
27   and dropped to the ground.  Portillo fired

12

1    several shots and Pareves drew a revolver and

2    fired one shot in return.  The inmate then got

3    back into the Toyota and the three drove away.

4    Half a block from the bar, the Los Angeles

5    County Deputy Sheriff's, Manuel Avina, A-V-I-N-

6    A, and Gabriel Graves, G-R-A-V-E-S --

7              ATTORNEY STANTON:  I think it's Avina.

8              PRESIDING COMMISSIONER ANGELE:  I said

9    Avina, A-V-I-N-A.

10             INTERPRETER GARCIA:  Avina?

11             PRESIDING COMMISSIONER ANGELE:  A-V-I-

12   N-A.  They saw the Toyota coming towards them

13   with a shotgun barrel sticking up between the

14   driver's and passenger's seats.  Deputies

15   stopped the automobile and the inmate and his

16   crime partner were taken into custody.

17             INTERPRETER GARCIA:  What was the last

18   statement?

19             PRESIDING COMMISSIONER ANGELE:  Taken

20   into custody.  And that ends the Statement of

21   Fact.  The inmate -- the inmate's version, when

22   he was interrogated, he said he had been

23   involved in a fight at the bar and the security

24   guards had escorted him out.  He told his

25   associates to drive him to the alley behind the

26   bar.  When he saw the two security guards, he

27   pointed a shotgun out the window and shot at

13

1  them four or five times.  Once at the Sheriff's

2  station, the inmate reiterated his statement,

3  that he had been sprayed with mace and escorted

4  from the bar.  That they had gone to a -- to a

5  home, to retrieve a shotgun.  They went back to

6  the bar.  Inmate first said that he fired the

7  gun into the air but then admitted firing it at

8  the security guards, stating that he did not

9  intend to kill them.  That ends the reading of

10  the Statement of Fact on the inmate's initial

11  statement.  Mr. Portillo, is that what happened

12  that night?

13      INMATE PORTILLO (THROUGH INTERPRETER

14  GARCIA):  I can say something?

15      PRESIDING COMMISSIONER ANGELE:  Well,

16  I'd prefer that he just answer the questions.

17  Didn't you fire the -- fire the shotgun at the

18  security guards?

19      INMATE PORTILLO (THROUGH INTERPRETER

20  GARCIA):  No.

21      PRESIDING COMMISSIONER ANGELE:  Why did

22  you tell the officers the night of the arrest

23  that he did?

24      INMATE PORTILLO (THROUGH INTERPRETER

25  GARCIA):  I did not say that to the officer.

26      PRESIDING COMMISSIONER ANGELE:  Are you

27  telling me that four officers lied about what

14

1    you said?

2           INMATE PORTILLO (THROUGH INTERPRETER

3    GARCIA):  The only thing I can state is that I

4    did not say that to the officer.

5           PRESIDING COMMISSIONER ANGELE:  Okay.

6    So you deny the crime?

7           INMATE PORTILLO (THROUGH INTERPRETER

8    GARCIA):  No.  No, I do not deny the crime.

9           PRESIDING COMMISSIONER ANGELE:  You

10   deny firing the weapon?

11          INMATE PORTILLO (THROUGH INTERPRETER

12   GARCIA):  I do not deny that the firearm was

13   there in the car.

14          PRESIDING COMMISSIONER ANGELE:  My

15   question was, do you deny that you fired the

16   weapon?

17          INMATE PORTILLO (THROUGH INTERPRETER

18   GARCIA):  Yes.

19          PRESIDING COMMISSIONER ANGELE:  Were

20   you there?

21          INMATE PORTILLO (THROUGH INTERPRETER

22   GARCIA):  Yes.  Yes, I was in the backseat.

23          PRESIDING COMMISSIONER ANGELE:  Who

24   fired the weapon?

25          INMATE PORTILLO (THROUGH INTERPRETER

26   GARCIA):  I had been sprayed with gas and I was

27   not able to see as to who was (inaudible).

15

1    PRESIDING 0COMMISSIONER ANGELE:  Where

2    did the shotgun come from?

3    INMATE PORTILLO (THROUGH INTERPRETER

4    GARCIA):  By what I understand or what I know,

5    is that that firearm was right there in the

6    vehicle.

7    PRESIDING COMMISSIONER ANGELE:  Is it a

8    true statement that you went to somebody's

9    house to get the shotgun?

10    INMATE PORTILLO (THROUGH INTERPRETER

11    GARCIA):  No.

12    PRESIDING COMMISSIONER ANGELE:  The

13    report indicates that you have no prior arrest

14    record.

15    INTERPRETER GARCIA:  What was that?

16    PRESIDING COMMISSIONER ANGELE:  No

17    prior arrest record, either as an adult or a

18    juvenile.  Correct?

19    INMATE PORTILLO (THROUGH INTERPRETER

20    GARCIA):  That's correct.

21    PRESIDING COMMISSIONER ANGELE:  You

22    were born on September 17th, 1971 in El

23    Salvador.

24    INMATE PORTILLO (THROUGH INTERPRETER

25    GARCIA):  Yes.

26    PRESIDING COMMISSIONER ANGELE:  The

27    seventh of eight children.

# EXHIBIT  D

EX D

To : Juan A. Portillo, H-80425, Alias Lino.

June 17, 06

Hello Lino, I greet you with all my love as always, wishing you find yourself enjoying good health, since I find myself well, thank God, and the truth, it please me to hear from you. Believe me, that many times I tried to get a hold of you, but I had no luck. I wrote you to the old address of your sister, and no one answered me. Also, I wrote Tano, but he did not answer either, but what matters is that you are doing well, and that makes me feel good. Well, let me tell you that Mario got out in May of the last year check it out, he got to my head. He talked a lot and I did not pay attention to what he said. The truth is that he made like water and he put us in the wrong. I already talked to my Counselor of this prison, and I told him that you were not the one who shot, and he was the one, the guys they let go, but he told me that now they cannot bring him back. Believe me, that I am very upset at him. He got us into this problem and then, we follow him in not taking the 4 and 5 years that they were offering us. Now, we only have to prove to the Board that they were mistaken in letting Mario leave, and, I would like if you have the proof of the fingerprint on the trigger, it would please me if you send it to me, because that kind of proof they cannot deny you, because check this out hat I just got back from going to the Board and they told me a lot of things that I did not understand, until they told me that Mario had said all these things, and I did not accept what Mario had said, that was so much confusion with the Board, that we did not come into agreement, so they had to postpone because of what Mario had said. But, I thank you have an opportunity to even sue the Government, because they are accusing you of something that has put your life in danger, and it's not true, the accusation. I hope that you are not with your arms crossed. I hope you have in your hands the proof of the trigger, and if you have any questions for me, just write me, and I will answer them quickly and also, let me tell you that I have contact with the Honduran girl who was with me the night that this problem occurred Do you remember her? Well, her name is Patty and figures that he Board didn't want to accept her as a witness. She is willing to help me, but they do not want to accept her. And, also let me tell you that I contacted Delmar to see if he could get a hold of any of the many videos that they took of us, but never told me nothing about the videos and he has not written back. He lives in Dallas, Texas, and also, do you know what happen, who it was, who went to the apartment a took all the things out of it. I only want to recover the many pictures I had, over 250 photos. Two times from a teenage chamberlain and one from a

1

wedding. I think that you may remember all those pictures, that's the only thing I want to get back, and also let me tell you that not long ago 2 individuals took the life of both my parents, the truth is that news was killing me but thank God I am recovering. I believe I have lost everything, but life goes on. Hear from you, and I wish to know that you are doing good health care, and also psychologically. I am at Avenal in yard 5. Let me know where I can find you. Maybe I can ask for a transfer wherever you are, because they will get us out here. Well buddy, I hope that you take good care of yourself, and that God continue to protect you wherever you are. My God bless you.

Sincerely your friend.

Mauro Hernandez


STATE OF CALIFORNIA          )

COUNTY OF LOS ANGELES )


I, Maria Martha Romero, Notary Public of California do hereby certify that this is a true translation from the attached document dated June 17, 06, to the best of my knowledge, ability, and experience. Also, that I am a qualified person to translate from Spanish into English, and from English into Spanish.

Executed this 21st day of September, 2006.

My Commission expires on 07/23/2007.


*Maria Martha Romero*
Notary Public


MARIA MARTHA ROMERO
Commission # 1429326
Notary Public - California
Los Angeles County
My Comm. Expires Jul 23, 2007

?

Junio 17, 06

Hola Lino, te saludo con todo el cariño de siempre, deceando
que te encuentres gosando de una muy buena salud, ya que
yo me encuentro vien gracias a Dios, y laverdad que
meda mucho gusto poder saber de nueba de ti, creeme que
trate muchas veces de poder comunicarme con tigo, pero
no tube suerte, escribi a la bieja direccion de tu hermana
y nadien me contesto, tambien le escribi al toño, tampoco
me contesto, pero lo bueno es que estes vien y eso me ase
sentirme vien, pues te cuento que morio salio en mayo del
año pasada, fijate que me echo de cabeza, ablo de mas y yo
no me he echo cargo de lo que el dijo, laverdad que aquel señor
hiso de agua y nos puso en mal, yo ya able con mi consul de la
pricion y le dije que eso no puistes quien disparo, fue el que
dejaron hir, pero el medijo que llamo lo pueden traer para atra
creeme que yo estoy muy enojado con aquel, nos metio en
este problema, y luego le seguimos el juego en no agarrar los
y 5 años que nos devan, ahora solo nos queda comprobarle a la
tabla que se equibocaron en dejar hir a morio, y me gustaria
que si tedes la prueba de la huella del gatillo, me gustaria
que mela mandaras, por que esa prueba note la pueden nege
por que fijate que yo acaba de hir a la tabla y me dijeron un
puño de cosas que yo ni encuenta, esto que me dijeron que morio
avia dicho todo eso y yo name hice cargo de lo que morio dij
que tanta la conficion de la tabla que nose pucieron deacuerd
y tubieron que posponerlo por lo que dijo morio, pero yo pienso
que ves tenes chansa de esta demandar al govierno, por que n
estan acusando de algo que ha pucieron en peligro tu vida, a
que no es cierto de la acusacion, espero queno estes con los

# EXHIBIT E

12

1    directly to the District Attorney's office, and then

2    the District Attorney, at that point, can verify that

3    what they're saying in those letters are, in fact,

4    correct, and then we'll bring that up into the Board.

5    The only information that we are going to go by is

6    what's in the record at this point.  Yes, sir?

7            INMATE PORTILLO:  Excuse me a minute.  What

8    District Attorney are you --

9            PRESIDING COMMISSIONER BIGGERS:  The District

10    Attorney from LA County.

11           INMATE PORTILLO:  By the way, my sister, my

12    (inaudible) send a copy of this letter to the District

13    Attorneys.

14           PRESIDING COMMISSIONER BIGGERS:  That's fine.

15    But we, as the Board of Prison Terms, do not accept

16    anything that has to do with your trial that is not

17    coming down from the District Attorney's office and

18    also from the court of appeals.

19           ATTORNEY JUDD:  I believe the District Attorney

20    got --

21           PRESIDING COMMISSIONER BIGGERS:  Do you have a

22    copy of that letter, Mr. Smith?

23           DEPUTY DISTRICT ATTORNEY SMITH:  It's not in my

24    immediate file that I have for the Board.  It could be

25    somewhere else, but I don't see it initially, but if

26    it's a letter from the inmate's family or anyone else,

27    I can assure you that we probably would not consider it

13

1   because the police reports that were confessions by

2   both of his associates saying that he's the one that

3   did the shooting.  We have a confession from him to the

4   police saying that he did the shooting.  We have two

5   eyewitnesses that said he did the shooting.  Any

6   written statements from somebody years later trying to

7   help the inmate based upon statements that are not

8   corroborated, we wouldn't accept.  The record stands

9   for itself, and it's 100 percent accurate.  The inmate

10  did the shooting, and his codefendants said he did the

11  shooting, and we have two eyewitnesses.

12          PRESIDING COMMISSIONER BIGGERS:  All right.  I

13  understand that, Mr. Smith.  But supposedly, now, these

14  two letters are from the codefendants, and that's why I

15  said they need to go to the District Attorney's office

16  and they have to collaborate?

17          ATTORNEY JUDD:  As you hear, they're not going

18  to accept them.  There is no procedure, I suppose, for

19  these letters to get to the Board and to be considered.

20          PRESIDING COMMISSIONER BIGGERS:  Well --

21          ATTORNEY JUDD:  For what they're worth.

22          PRESIDING COMMISSIONER BIGGERS:  Well, he can

23  send them to the DA's office.  What he's saying right

24  now is if they're from family members, you know, that

25  there's a process.  I would send them to the DA's

26  office and let them decide.  Let them respond back to

27  you.  We are going to stand on the record.

JS44
(Rev. 07/89)

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

FILED

APR 16 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

**I (a) PLAINTIFFS**

**Juan Portillo**

FILING FEE PAID
Yes ___ No ___
IFP MOTION FILED
Yes ___ No ___
COPIES SENT TO:
Court ___ Pro Per ___

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   **Imperial**

(EXCEPT IN U.S. PLAINTIFF CASES)

**Victor M. Alm...**

DEFENDANTS

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Juan Portillo
PO Box 931
Imperial, CA 92251
H-80425

ATTORNEYS (IF KNOWN)

**'08 CV 0706 LAB JMA**

| II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY) | III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX<br>(For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT |
|---|---|

| | | | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question<br>(U.S. Government Not a Party) | Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business<br>in This State | ☐ 4 | ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in<br>Item III) | Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business<br>in Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign<br>Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

### 28 U.S.C. 2254

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-<br>Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury -<br>Product Liability | of Property 21 USCR81 | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment<br>&Enforcement of Judgment | ☐ 330 Federal Employers'<br>Liability | ☐ 368 Asbestos Personal Injury<br>Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and<br>Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student<br>Loans (Excl. Veterans) | ☐ 345 Marine Product<br>Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment<br>of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities<br>Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product<br>Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal<br>Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage<br>Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence<br>Habeas Corpus | ☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff<br>or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party<br>26 USC 7609 | ☐ 900 Appeal of Fee Determination<br>Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ Security Act | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN<br>COMPLAINT: | ☐ CHECK IF THIS IS A CLASS<br>ACTION UNDER f.r.c.p. 23 | DEMAND $ | Check YES only if demanded in complaint:<br>JURY DEMAND: ☐ YES ☐ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE ___   Docket Number ___

| DATE  4/16/2008 | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

149953   MS 4/18 $5

CR

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# # 149953    — MS

## April 18, 2008
## 09:34:12

## Habeas Corpus

USAO #.: 08CV0706 -LAB
Judge..: LARRY A BURNS
Amount.:                    $5.00 MO
Check#.: 189-069241

## Total—> $5.00

FROM: JUAN PORTILLO
      VS. VOCTOR M. ALMAGE, WARDEN