Juan A. Portillo
NAME
H-80425
PRISON NUMBER

Centinela State Prison
CURRENT ADDRESS OR PLACE OF CONFINEMENT
P.O. Box 931 - D3-119L
Imperial, California 92251-0931
CITY, STATE, ZIP CODE

**FILED**

2008 MAY 13 PM 2: 34

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

JUAN PORTILLO_____,
(FULL NAME OF PETITIONER)

                          **PETITIONER**

                 v.

VICTOR M. ALMAGER, Warden_____,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

                          **RESPONDENT**
                 and

_____,
The Attorney General of the State of
California, Additional Respondent.

Civil No   **08-0706-LAB (JMA)**
          (TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

# FIRST AMENDED
## PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: _____
   Superior Court of California, County of Los Angeles

2. Date of judgment of conviction: 08-03-07

3. Trial court case number of the judgment of conviction being challenged: VA023876

_____

4. Length of sentence: Life (Parole Matter)

CIV 68 (Rev. Jan. 2006)

                                                        cv

5. Sentence start date and projected release date: Start date: June 28, 1993; Projected release date: Currently unknown

6. Offense(s) for which you were convicted or pleaded guilty (all counts): Attempted Murder
///
///

7. What was your plea? (CHECK ONE)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury ☒
   (b) Judge only ☐

9. Did you testify at the trial?
   ☐ Yes ☐ No

**DIRECT APPEAL**

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☒ Yes ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
    (a) Result: Petition Denied
    (b) Date of result (if known): August 22, 2007
    (c) Case number and citation (if known): BA201335
    (d) Names of Judges participating in case (if known) Spencer, P.J.; Vogel, J.; and Mallano, J.
    (e) Grounds raised on direct appeal: Board Of Parole Hearings Violated Petitioner's Due Process Right, Because Its Decision Failed To Reflect Consideration Of Petitioner's Institutional Behavior As A Circumstance Tending To Demonstrate His Suitability For Parole

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
    (a) Result: Petition Denied
    (b) Date of result (if known): February 27, 2008
    (c) Case number and citation (if known): S156142

    (d) Grounds raised: Board Of Parole Hearings Violated Petitioner's Due Process Right, Because Its Decision Failed To Reflect Consideration Of Petitioner's Institutional Behavior As A Circumstance Tending To Demonstrate Suitability For Parole

**13.** If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

    (a) Result: _____ Not Applicable _____

    (b) Date of result (if known): _____

    (c) Case number and citation (if known): _____

    (d) Grounds raised: _____

    _____

    _____

    _____

    _____

## COLLATERAL REVIEW IN STATE COURT

**14.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
☒ Yes ☐ No

**15.** If your answer to #14 was "Yes," give the following information:

    (a) **California Superior Court** Case Number (if known): VA023876

    (b) Nature of proceeding: Habeas Corpus Petition
       ///

    (c) Grounds raised: The Board Of Parole Hearings Violated Petitioner's Due Process Right, Because Its Decision Failed To Reflect Consideration Of Petitioner's Institutional Behavior As A Circumstance Tending To Demonstrate His Suitability For Parole

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
      ☐ Yes ☒ No

    (e) Result: Petition Denied

    (f) Date of result (if known): August 3, 2007

      (See Attachment "A")

**16.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
☒ Yes ☐ No

17. If your answer to #16 was "Yes," give the following information:

    (a) **California Court of Appeal** Case Number (if known): BA201335

    (b) Nature of proceeding: Habeas Corpus Petition

    (c) Names of Judges participating in case (if known) Spencer, P.J.; Vogel, J.; and Mallano, J.

    (d) Grounds raised: The Board Of Parole Hearings Violated Petitioner's Due Process Right, Because Its Decision Failed To Reflect Consideration Of Petitioner's Institutional Behavior As A Circumstance Tending To Demonstrate His Suitability For Parole

    (e) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes  ☒ No

    (f) Result: Petition Denied

    (g) Date of result (if known): August 22, 2007
      (See Attachment "B")

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☒ Yes  ☐ No

19. If your answer to #18 was "Yes," give the following information:

    (a) **California Supreme Court** Case Number (if known): S156142

    (b) Nature of proceeding: Habeas Corpus Petition
      ///

    (c) Grounds raised: The Board Of Parole Hearings Violated Petitioner's Due Process Right, Because Its Decision Failed To Reflect Consideration Of Petitioner's Institutional Behavior As A Circumstance Tending To Demonstrate His Suitability For Parole
      ///

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
      ☐ Yes  ☒ No

    (e) Result: Petition Denied

    (f) Date of result (if known): February 27, 2008
      (See Attachment "C")

20. If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

<u>                             Not Applicable                              </u>

<u>                                                                         </u>

<u>                                                                         </u>

<u>                                                                         </u>

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
    ☒ Yes ☐ No    (IF "YES" SKIP TO #22)
    (a) If no, in what federal court was the prior action filed? _____
        (i) What was the prior case number? _____
        (ii) Was the prior action (CHECK ONE):
            ☐ Denied on the merits?
            ☐ Dismissed for procedural reasons?
        (iii) Date of decision: _____
    (b) Were any of the issues in this current petition also raised in the prior federal petition?
        ☐ Yes ☐ No
    (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
        ☐ Yes ☐ No

**<u>CAUTION:</u>**

- **<u>Exhaustion of State Court Remedies:</u>** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **<u>Single Petition:</u>** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **<u>Factual Specificity:</u>** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. (e.g. what happened during the state proceedings that you contend resulted in a violation of the constitution, law or treaties of the United States.) If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: THE BOARD OF PAROLE HEARINGS VIOLATED PETITIONER'S DUE PROCESS RIGHT, BECAUSE ITS DECISION FAILED TO REFLECT CONSIDERATION OF PETITIONER'S INSTITUTIONAL BEHAVIOR AS A CIRCUMSTANCE TENDING TO DEMONSTRATE HIS SUITABILITY FOR PAROLE

**Supporting FACTS**: Petitioner contends that the Board Of Parole Hearings (hereinafter "BPH") abused its discretion in that, the BPH clearly appears to find Petitioner unsuitable for parole based solely on his commitment offense. On that basis, the BPH found that Petitioner would pose an unreasonable risk of danger to society or a threat to public safety if release from prison. Moreover, the BPH characterized his commitment offense as having been carried out in a "calculated manner." (Exhibit A).

In the psychological evaluation conducted by Dr. Nancy Petasa on June 22, 2003, the evaluation is supportive of release in that she states, "it appears that your level of dangerousness is low at this time." Clearly, the BPH ignored this evidence of Petitioner's rehabilitation, and continued to rely on the unchanging factirs of his commitment offense.

The BPH is the administrative agency authorized to grant parole and fix release dates. The BPH exercises wide discretion in fixing an inmate's term and setting his parole date. The BPH enjoys broad but [not] absolute discretion in parole-related matters.

///

[CONTINUED ON PAGE −6(A)−]

**Did you raise GROUND ONE in the California Supreme Court?**

☒ Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): Habeas Petition

(2) Case number or citation: S156142

(3) Result (attach a copy of the court's opinion or order if available): Petition Denied. (See Attachment "C")

**GROUNDS FOR RELIEF** - **Ground One** - (Continued From Page 6):

Petitioner contends that the BPH abused its discretion when it arbitrarily denied parole suitability. The BPH's conclusion that Petitoiner was dangerous if released into society, clearly conflicts with Dr. Petsas' report. To begin, Dr. Petsas reported that Petitioner made poor choices in life. She also stated, "... he feels remorseful and thanks [sic] God that no one lost a life." She further stated, "Mr. Portillo's understanding and insight. He understands how his action can impact himself and others.." (Exhibit B). Contrary to the BPH's findings, this stands to demonstrate that Petitioner has grown to have remarkable insight by attending numerous self-help groups designed to assist him in gaining insight into the participation in the commitment offense.

The BPH next appears to express its concern regarding Petitioner attempting to mislead the panel about his involvement in the commitment offense. (Exhibit A). This could not be further from the truth. Beginning with his initial Board Hearing in 2001, Petitioner has consistently denied firing the gun. (Exhibit C).

Petitioner contends that now that he has obtained proof that he did not shoot the gun at the security guards (Exhibit D), the BPH has refused to entertain the exculpatory evidence. (Exhibit E). This action taken by the BPH is clearly contrary to the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

For the foregoing reasons, Petitioner respectfully requests this Honorable Court grant him relief.

* * * * *

**(b) GROUND TWO:** _____ Not Applicable _____

_____

_____

_____

**Supporting FACTS:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND TWO in the California Supreme Court?**

☐ Yes ☐ No.

　　If yes, answer the following:

　　(1)　Nature of proceeding (i.e., petition for review, habeas petition): _____

　　(2)　Case number or citation: _____

　　(3)　Result (attach a copy of the court's opinion or order if available): _____

**(c) GROUND THREE:** _____ Not Applicable _____

_____

_____

**Supporting FACTS:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND THREE in the California Supreme Court?**

☐ Yes ☐ No.

    If yes, answer the following:

    (1)   Nature of proceeding (i.e., petition for review, habeas petition): _____

    (2)   Case number or citation: _____

    (3)   Result (attach a copy of the court's opinion or order if available): _____

**(d)   GROUND FOUR:** _____ Not Applicable _____

_____

_____

**Supporting FACTS:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND FOUR in the California Supreme Court?**

☐ Yes ☐ No.

If yes, answer the following:

(1)   Nature of proceeding (i.e., petition for review, habeas petition): _____

(2)   Case number or citation: _____

(3)   Result (attach a copy of the court's opinion or order if available): _____

**23.** Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes  ☒ No

**24.** If your answer to #23 is "Yes," give the following information:

(a)  Name of Court: _____

(b)  Case Number: _____

(c)  Date action filed: _____

(d)  Nature of proceeding: _____

_____

(e)  Name(s) of judges (if known): _____

(f)  Grounds raised: _____

_____

_____

_____

_____

(g)  Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes  ☐ No

**25.** Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a)  At preliminary hearing: _____ Not Applicable _____

(b)  At arraignment and plea: _____ Not Applicable _____

(c)  At trial: _____ Not Applicable _____

(d)  At sentencing: _____ Not Applicable _____

(e)  On appeal: _____ Not Applicable _____

(f)  In any post-conviction proceeding: _____ Not Applicable _____

(g)  On appeal from any adverse ruling in a post-conviction proceeding: _ Not Applicable _____

CIV 68 (Rev. Jan. 2006)

cv

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☐ Yes  ☒ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes  ☒ No

(a) If so, give name and location of court that imposed sentence to be served in the future:

_____

(b) Give date and length of the future sentence: _____

_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
☐ Yes  ☐ No

28. Consent to Magistrate Judge Jurisdiction

In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to proceed before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.

Choose only one of the following:

☒ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

☐ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

CIV 68 (Rev. Jan. 2006)

-11-

cv

**29.** Date you are mailing (or handing to a correctional officer) this Petition to this court: _____

_____

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____Not Applicable_____
SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

_5/11/08_____                    _____

(DATE)                                SIGNATURE OF PETITIONER

CIV 68 (Rev. Jan. 2006)

cv

ATTACHMENT "A"

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 08/04/07

------------------------------------------------------------------------

CASE NO. VA023876

THE PEOPLE OF THE STATE OF CALIFORNIA
VS.
DEFENDANT 01:  JUAN ANTONIO PORTILLO

------------------------------------------------------------------------

COUNT 01: 664-187(A) PC FEL  - ATTEMPTED MURDER.

COUNT 02: 664-187(A) PC FEL  - ATTEMPTED MURDER.
COUNT 03: 245(A)(2) PC FEL  - ASSAULT WITH FIREARM ON PERSON.
COUNT 04: 245(A)(2) PC FEL  - ASSAULT WITH FIREARM ON PERSON.


ON 08/03/07 AT  130 PM  IN SOUTHEAST DISTRICT DEPT SEF

CASE CALLED FOR HABEAS CORPUS PETITION

PARTIES: BRIAN F. GASDIA (JUDGE)  FRANCES PALUMBO  (CLERK)
         NONE      (REP)  NONE  (DDA)

DEFENDANT IS NOT PRESENT IN COURT, AND NOT REPRESENTED BY COUNSEL

ORDER DENYING WRIT OF HABEAS CORPUS.

THE PETITION FOR WRIT OF HABEAS CORPUS SIGNED BY PETITIONER
ON 4/16/07 IS DENIED FOR THE FOLLOWING REASONS:

1.  THE PETITION CONTAINS ONLY VAGUE,  CONCLUSORY ALLEGATIONS.

CONCLUSORY ALLEGATIONS MADE WITHOUT ANY EXPLANATION OF THE BASIS
FOR THE ALLEGATIONS DO NOT WARRANT RELIEF.  (PEOPLE V. KARIS
(1988) 46 CAL.3D 612, 656; PEOPLE V. DUVALL (1995) 9 CAL.4TH
464, 474).

2.  PETITIONER HAS FAILED TO SHOW A PRIMA FACIE CASE FOR RELIEF
(IN RE CROW (1971) 4 CAL.3D 613,624)  THE BURDEN IS ON
PETITIONER TO ESTABLISH GROUNDS FOR HIS RELEASE (PEOPLE V.
DUVALL (1995) 9 CAL.4TH 464, 474).

3.  TO THE EXTENT THAT PETITIONER'S COMPLAINTS RELATE TO ACTIONS
OF PRISON OFFICIALS AND THE BOARD OF PRISON TERMS, LOS ANGELES
COUNTY IS NOT THE APPROPRIATE JURISDICTION ONCE PETITIONER
STATES A PRIMA FACIE CASE FOR RELIEF.  (GRIGGS V. SUPERIOR
COURT (1976) 16 CAL.3D 341, 347; IN RE CROW (1971) 4 CAL.3D 613,


                              HABEAS CORPUS PETITION
         PAGE NO.   1        HEARING DATE: 08/03/07

CASE NO. VA023876
DEF NO.  01                                    DATE PRINTED 08/04/07

624).

4.  IT DOES NOT APPEAR THAT PETITIONER HAS EXHAUSTED AVAILABLE
ADMINISTRATIVE REMEDIES (IN RE DEXTER (1979) 25 CAL.3D 921, 925)

A COPY OF THIS MINUTE ORDER IS MAILED TO THE DEFENDANT AS
FOLLOWS:
JUAN PORTILLO
CENTINELA STATE PRISON
P.O. BOX 931
IMPERIAL, CA  92251

NEXT SCHEDULED EVENT:
PROCEEDINGS TERMINATED

HABEAS CORPUS PETITION
                                 HEARING DATE: 08/03/07

ATTACHMENT "B"

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

In re

JUAN ANTONIO PORTILLO,

on

Habeas Corpus.

B201335

(L.A.S.C. No. VA023876)

O R D E R

COURT OF APPEAL · SECOND DIST.
F I L E D
AUG 2 2 2007
JOSEPH A. LANE                    Clerk
P. GONZALEZ              Deputy Clerk

THE COURT*:

The petition for writ of habeas corpus, filed August 16, 2007, has been read and considered.

The petition is denied.

_____

*SPENCER, P. J.          VOGEL, J.          MALLANO, J.

ATTACHMENT "C"

S156142

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

---

In re JUAN PORTILLO on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

George, C. J., and Corrigan, J., were absent and did not participate.


SUPREME COURT
FILED

FEB 2 7 2008

Frederick K. Ohlrich Clerk

---
Deputy


---
**BAXTER**
Acting Chief Justice

ATTACHMENT "D"

1
2
3
4
5
6
7
8       **UNITED STATES DISTRICT COURT**
9       **SOUTHERN DISTRICT OF CALIFORNIA**
10
11      JUAN A. PORTILLO,                          Civil No.    08-0706 LAB (JMA)
12                              Petitioner,
                                                   **ORDER DISMISSING CASE WITHOUT**
13              v.                                 **PREJUDICE**
14      VICTOR M. ALMAGER, Warden,
15                              Respondent.

16              Petitioner, a state prisoner proceeding pro se, has submitted a Petition for Writ of Habeas

17      Corpus pursuant to 28 U.S.C. § 2254.

18              <u>**FAILURE TO ALLEGE EXHAUSTION OF STATE JUDICIAL REMEDIES**</u>

19              Habeas petitioners who wish to challenge either their state court conviction or the length of their

20      confinement in state prison, must first exhaust state judicial remedies.  28 U.S.C. § 2254(b), (c);

21      <u>Granberry v. Greer</u>, 481 U.S. 129, 133-34 (1987).  To exhaust state judicial remedies, a California state

22      prisoner must present the California Supreme Court with a fair opportunity to rule on the merits of every

23      issue raised in his or her federal habeas petition. 28 U.S.C. § 2254(b), (c); <u>Granberry</u>, 481 U.S. at 133-

24      34.  Moreover, to properly exhaust state court remedies a petitioner must allege, <u>in state court</u>, how one

25      or more of his or her federal rights have been violated.  The Supreme Court in <u>Duncan v. Henry</u>, 513

26      U.S. 364 (1995) reasoned: "If state courts are to be given the opportunity to correct alleged violations

27      of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims

28      <u>under the United States Constitution</u>."  <u>Id.</u> at 365-66 (emphasis added).  For example, "[i]f a habeas

1  petitioner wishes to claim that an evidentiary ruling at a state court trial denied him [or her] the due

2  process of law guaranteed by the Fourteenth Amendment, he [or she] must say so, not only in federal

3  court, but in state court." Id. at 366 (emphasis added).

4      Nowhere on the Petition does Petitioner allege that he raised his claim in the California Supreme

5  Court. In fact, he specifically indicates he did not seek review in the California Supreme Court. (See

6  Pet. at 6.) If Petitioner has raised his claim in the California Supreme Court he must so specify. "The

7  burden of proving that a claim has been exhausted lies with the petitioner." Matthews v. Evatt, 105 F.3d

8  907, 911 (4th Cir. 1997); see Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998); Lambert v. Blackwell,

9  134 F.3d 506, 513 (3d Cir. 1997); Oyler v. Allenbrand, 23 F.3d 292, 300 (10th Cir. 1994); Rust v. Zent,

10  17 F.3d 155, 160 (6th Cir. 1994).

11      Further, the Court cautions Petitioner that under the Antiterrorism and Effective Death Penalty

12  Act of 1996 (AEDPA) a one-year period of limitation shall apply to a petition for a writ of habeas corpus

13  by a person in custody pursuant to the judgment of a State court. The limitation period shall run from

14  the latest of:

15      (A) the date on which the judgment became final by the
     conclusion of direct review or the expiration of the time for seeking such
16      review;

17      (B) the date on which the impediment to filing an application
     created by State action in violation of the Constitution or laws of the
18      United States is removed, if the applicant was prevented from filing by
     such State action;
19
     (C) the date on which the constitutional right asserted was initially
20      recognized by the Supreme Court, if the right has been newly recognized
     by the Supreme Court and made retroactively applicable to cases on
21      collateral review; or

22      (D) the date on which the factual predicate of the claim or claims
     presented could have been discovered through the exercise of due
23      diligence.

24  28 U.S.C.A. § 2244(d)(1)(A)-(D) (West Supp. 2002).

25      The statute of limitations does not run while a properly filed state habeas corpus petition is

26  pending. 28 U.S.C. § 2244(d)(2); see Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). But see

27  Artuz v. Bennett, 531 U.S. 4, 8 (2000) (holding that "an application is 'properly filed' when its delivery

28  and acceptance [by the appropriate court officer for placement into the record] are in compliance with

the applicable laws and rules governing filings."). However, absent some other basis for tolling, the statute of limitations does run while a <u>federal</u> habeas petition is pending. <u>Duncan v. Walker</u>, 533 U.S. 167, 181-82 (2001).

Rule 4 of the Rules Governing Section 2254 Cases provides for summary dismissal of a habeas petition "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . ." Rule 4, 28 U.S.C. foll. § 2254. Here, it appears plain from the Petition that Petitioner is not presently entitled to federal habeas relief because he has not alleged exhaustion of state court remedies.

## CONCLUSION AND ORDER

Accordingly, the Court **DISMISSES** the Petition without prejudice and with leave to amend for Petitioner's failure to allege exhaustion as to state judicial remedies. If Petitioner wishes to proceed with this case, he must submit, **no later than June 25, 2008,** a copy of this Order and a First Amended Petition which remedies the deficiencies noted above. **The Clerk of the Court is directed to mail Petitioner a blank First Amended Petition form.**

**IT IS SO ORDERED.**

DATED: April 30, 2008

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

K:\COMMON\EVERYONE\_EFILE-PROSE\BLAENDER\0706 dismiss wpd, 115

# EXHIBIT A

82

## CALIFORNIA BOARD OF PAROLE HEARINGS

### D E C I S I O N

1
2

3    DEPUTY COMMISSIONER MUGA: Okay. We're back on

4    the record.

5    PRESIDING COMMISSIONER BIGGERS: Okay. Let the

6    record reflect that everyone that was in the room prior

7    to us going into deliberations are now back in the

8    room. Before I give the decision, Mr. Portillo,

9    there's something that I need to pass onto you. In

10   your last hearing in 2005, you were told certain

11   things, and one of them was you need to reconsider your

12   involvement in the crime and based on what was in the

13   record, and yet you came back today with a slightly

14   different version, and that's creating a problem for

15   you, sir, because you're doing a lot of things. Now,

16   you have gone on the record and given different

17   versions from the time that you were arrested to the

18   time that you've been here to the time that you have

19   now, and you have been convicted of this crime. And

20   regardless of what you're saying and the way, and I

21   don't know if it's because you don't understand some of

22   the questions that I even I was asking or what the

23   District Attorney was asking, before your next hearing,

24   I'm going to recommend that they have an interpreter in

25   here that can explain things to you a little bit better

26   because the way you're coming across, it's like

27   JUAN PORTILLO    H-80425    DECISION PAGE 1    12/28/2006

1    whenever a certain question is asked about the crime,

2    you have a tendency to not to want to talk about it.

3    You start kind of moving in different directions, and

4    that's hurting you, sir, to be honest with you.  That's

5    really creating a problem like you are still minimizing

6    your involvement with the crime, and I will cover that

7    a little later on as we go through.

8            DEPUTY COMMISSIONER MUGA:  Can I ask the

9    District Attorney to turn off his mic, please?

10           PRESIDING COMMISSIONER BIGGERS:  Okay.  Thank

11   you.

12           DEPUTY COMMISSIONER MUGA:  Thank you.

13           PRESIDING COMMISSIONER BIGGERS:  Now, in the

14   matter of Mr. Juan Portillo, CDC number H-80425, the

15   Panel has reviewed all information received from the

16   public and relied on the following circumstances to

17   conclude that the prisoner is not suitable for parole

18   and would pose an unreasonable risk of danger to

19   society or a threat to public safety if released from

20   prison.  It's going to be another one-year denial, sir.

21   And, again, the factors that we looked at, this offense

22   was carried out in a calculated manner and was a result

23   of the fact that you and your codefendants were tossed

24   out of a bar after an altercation.  You left the bar

25   with your codefendants -- I'm sorry, let me back up.

26   There was a fight in the bar.  You and your co-

27   **JUAN PORTILLO    H-80425    DECISION PAGE 2   12/28/2006**

# EXHIBIT  B

52

1   the doctor gives you a GAF or a Global Assessment of

2   Functioning of 80.  That's on a scale from zero to 100,

3   100 being the best.  So 80 is a really relatively high

4   school.  The doctor thought you were functioning pretty

5   high.  Okay.  Now, I'm just going to kind of read some

6   excerpts from the doctor's report.  I'm looking at the

7   last page under the review of life crime.  The doctor

8   writes:

9           "He had been drinking heavily since 10:00

10          a.m., and admits his memory may have been

11          quote not that good unquote.  He

12          continues to deny firing the gun, but at

13          the same time, he feels remorseful and

14          thanks God that no one lost a life.  He

15          admits not acting responsibly and is

16          sorry for all the pain he has caused

17          others.  Quote 'I will never use any

18          substances again.  My mind is for doing

19          good things with my life and not hurt my

20          neighbor or take a life.  I have

21          continued my program in AA slash NA, and

22          I will help others when they need me,'

23          close quote."

24          The next paragraph, assessment of

25   dangerousness, the doctor writes:

26          "His ability to refrain from disciplinary

27          conduct while in prison is indicative of

53

1    Mr. Portillo's understanding and insight.

2    He understands how his actions can impact

3    himself and others.  His genuine interest

4    in having a clean life, free of crime,

5    with family and the desire to be

6    positive.  Appears that his level of

7    dangerousness is low at this time."

8    In the last paragraph, the doctor writes, under

9    clinical observation, comments, and recommendations:

10    "Mr. Portillo admits to alcoholic

11    dependence and has made every effort by

12    continuing to partake in AA slash NA.

13    All is documented in his file.  He has

14    acquired computer skills and has a good

15    command of the English language.  If

16    granted a release, he needs to continue

17    in a outpatient drug rehabilitation

18    program.  He also needs to continue his

19    education.  Even though he has many

20    goals, one remains constant.  Quote 'I

21    want to contribute and to learn to be a

22    better person.  I want to see my children

23    again.' Close quote.  His ability to

24    maintain sobriety is the best predictor

25    of the living successfully in a

26    non-violent way in our society."

27    And those would be the highlights that I

# EXHIBIT C

11

1    instructed the prisoner -- whenever I'm
2    talking, please don't interrupt me until I
3    finish the question, while you're talking.
4            PRESIDING COMMISSIONER ANGELE:  Okay,
5    thank you.  And they drove off.
6            INTERPRETER GARCIA:  Toyota -- a white
7    Toyota, did you say?
8            PRESIDING COMMISSIONER ANGELE:  A
9    white, two door, Toyota.
10            PRESIDING COMMISSIONER ANGELE:  The
11    inmate's companion, Hernandez, drove the
12    vehicle.  Inmate was in the front passenger
13    seat and the inmate's companion, (inaudible) --
14    or Ruiz --
15            INTERPRETER GARCIA:  And who,
16    (inaudible)?
17            PRESIDING COMMISSIONER ANGELE:  And
18    Ruiz, was in the backseat.  About 20 minutes
19    later, Pareves and Briseno saw the white Toyota
20    coming down the alley behind the bar.  The
21    automobile stopped and the inmate got out.  He
22    took a shotgun from the automobile and began
23    shooting at Pareves and Briseno.  The first
24    shot hit a truck about a foot from Briseno and
25    he felt the breeze from the bullet as it passed
26    by him.  Pareves pushed Briseno under the truck
27    and dropped to the ground.  Portillo fired

12

1  several shots and Pareves drew a revolver and

2  fired one shot in return.  The inmate then got

3  back into the Toyota and the three drove away.

4  Half a block from the bar, the Los Angeles

5  County Deputy Sheriff's, Manuel Avina, A-V-I-N-

6  A, and Gabriel Graves, G-R-A-V-E-S --

7  ATTORNEY STANTON:  I think it's Avina.

8  PRESIDING COMMISSIONER ANGELE:  I said

9  Avina, A-V-I-N-A.

10  INTERPRETER GARCIA:  Avina?

11  PRESIDING COMMISSIONER ANGELE:  A-V-I-

12  N-A.  They saw the Toyota coming towards them

13  with a shotgun barrel sticking up between the

14  driver's and passenger's seats.  Deputies

15  stopped the automobile and the inmate and his

16  crime partner were taken into custody.

17  INTERPRETER GARCIA:  What was the last

18  statement?

19  PRESIDING COMMISSIONER ANGELE:  Taken

20  into custody.  And that ends the Statement of

21  Fact.  The inmate -- the inmate's version, when

22  he was interrogated, he said he had been

23  involved in a fight at the bar and the security

24  guards had escorted him out.  He told his

25  associates to drive him to the alley behind the

26  bar.  When he saw the two security guards, he

27  pointed a shotgun out the window and shot at

13

1    them four or five times. Once at the Sheriff's

2    station, the inmate reiterated his statement,

3    that he had been sprayed with mace and escorted

4    from the bar. That they had gone to a -- to a

5    home, to retrieve a shotgun. They went back to

6    the bar. Inmate first said that he fired the

7    gun into the air but then admitted firing it at

8    the security guards, stating that he did not

9    intend to kill them. That ends the reading of

10   the Statement of Fact on the inmate's initial

11   statement. Mr. Portillo, is that what happened

12   that night?

13   **INMATE PORTILLO (THROUGH INTERPRETER**

14   **GARCIA):** I can say something?

15   **PRESIDING COMMISSIONER ANGELE:** Well,

16   I'd prefer that he just answer the questions.

17   Didn't you fire the -- fire the shotgun at the

18   security guards?

19   **INMATE PORTILLO (THROUGH INTERPRETER**

20   **GARCIA):** No.

21   **PRESIDING COMMISSIONER ANGELE:** Why did

22   you tell the officers the night of the arrest

23   that he did?

24   **INMATE PORTILLO (THROUGH INTERPRETER**

25   **GARCIA):** I did not say that to the officer.

26   **PRESIDING COMMISSIONER ANGELE:** Are you

27   telling me that four officers lied about what

14

1  you said?

2        INMATE PORTILLO (THROUGH INTERPRETER

3  GARCIA):  The only thing I can state is that I

4  did not say that to the officer.

5        PRESIDING COMMISSIONER ANGELE:  Okay.

6  So you deny the crime?

7        INMATE PORTILLO (THROUGH INTERPRETER

8  GARCIA):  No.  No, I do not deny the crime.

9        PRESIDING COMMISSIONER ANGELE:  You

10  deny firing the weapon?

11        INMATE PORTILLO (THROUGH INTERPRETER

12  GARCIA):  I do not deny that the firearm was

13  there in the car.

14        PRESIDING COMMISSIONER ANGELE:  My

15  question was, do you deny that you fired the

16  weapon?

17        INMATE PORTILLO (THROUGH INTERPRETER

18  GARCIA):  Yes.

19        PRESIDING COMMISSIONER ANGELE:  Were

20  you there?

21        INMATE PORTILLO (THROUGH INTERPRETER

22  GARCIA):  Yes.  Yes, I was in the backseat.

23        PRESIDING COMMISSIONER ANGELE:  Who

24  fired the weapon?

25        INMATE PORTILLO (THROUGH INTERPRETER

26  GARCIA):  I had been sprayed with gas and I was

27  not able to see as to who was (inaudible).

1    PRESIDING 0COMMISSIONER ANGELE:    Where

2    did the shotgun come from?

3    INMATE PORTILLO (THROUGH INTERPRETER

4    GARCIA):  By what I understand or what I know,

5    is that that firearm was right there in the

6    vehicle.

7    PRESIDING COMMISSIONER ANGELE:    Is it a

8    true statement that you went to somebody's

9    house to get the shotgun?

10    INMATE PORTILLO (THROUGH INTERPRETER

11    GARCIA):  No.

12    PRESIDING COMMISSIONER ANGELE:    The

13    report indicates that you have no prior arrest

14    record.

15    INTERPRETER GARCIA:    What was that?

16    PRESIDING COMMISSIONER ANGELE:    No

17    prior arrest record, either as an adult or a

18    juvenile.   Correct?

19    INMATE PORTILLO (THROUGH INTERPRETER

20    GARCIA):  That's correct.

21    PRESIDING COMMISSIONER ANGELE:    You

22    were born on September 17th, 1971 in El

23    Salvador.

24    INMATE PORTILLO (THROUGH INTERPRETER

25    GARCIA):  Yes.

26    PRESIDING COMMISSIONER ANGELE:    The

27    seventh of eight children.

# EXHIBIT  D

EX D.

To : Juan A. Portillo, H-80425, Alias Lino.

June 17, 06

Hello Lino, I greet you with all my love as always, wishing you find yourself enjoying good health, since I find myself well, thank God, and the truth, it please me to hear from you. Believe me, that many times I tried to get a hold of you, but I had no luck. I wrote you to the old address of your sister, and no one answered me. Also, I wrote Tano, but he did not answer either, but what matters is that you are doing well, and that makes me feel good. Well, let me tell you that Mario got out in May of the last year check it out, he got to my head. He talked a lot and I did not pay attention to what he said. The truth is that he made like water and he put us in the wrong. I already talked to my Counselor of this prison, and I told him that you were not the one who shot, and he was the one, the guys they let go, but he told me that now they cannot bring him back. Believe me, that I am very upset at him. He got us into this problem and then, we follow him in not taking the 4 and 5 years that they were offering us. Now, we only have to prove to the Board that they were mistaken in letting Mario leave, and, I would like if you have the proof of the fingerprint on the trigger, it would please me if you send it to me, because that kind of proof they cannot deny you, because check this out hat I just got back from going to the Board and they told me a lot of things that I did not understand, until they told me that Mario had said all these things, and I did not accept what Mario had said, that was so much confusion with the Board, that we did not come into agreement, so they had to postpone because of what Mario had said. But, I thank you have an opportunity to even sue the Government, because they are accusing you of something that has put your life in danger, and it`s not true, the accusation. I hope that you are not with your arms crossed. I hope you have in your hands the proof of the trigger, and if you have any questions for me, just write me, and I will answer them quickly and also, let me tell you that I have contact with the Honduran girl who was with me the night that this problem occurred. Do you remember her? Well, her name is Patty and figures that he Board didn't want to accept her as a witness. She is willing to help me, but they do not want to accept her. And, also let me tell you that I contacted Delmar to see if he could get a hold of any of the many videos that they took of us, but never told me nothing about the videos and he has not written back. He lives in Dallas, Texas, and also, do you know what happen, who it was, who went to the apartment a took all the things out of it. I only want to recover the many pictures I had, over 250 photos. Two times from a teenage chamberlain and one from a

1

wedding. I think that you may remember all those pictures, that's the only thing I want to get back, and also let me tell you that not long ago 2 individuals took the life of both my parents, the truth is that news was killing me but thank God I am recovering. I believe I have lost everything, but life goes on. Hear from you, and I wish to know that you are doing good health care, and also psychologically. I am at Avenal in yard 5. Let me know where I can find you. Maybe I can ask for a transfer wherever you are, because they will get us out here. Well buddy, I hope that you take good care of yourself, and that God continue to protect you wherever you are. My God bless you.

Sincerely your friend.

Mauro Hernandez


STATE OF CALIFORNIA          )

COUNTY OF LOS ANGELES  )


I, Maria Martha Romero, Notary Public of California do hereby certify that this is a true translation from the attached document dated June 17, 06, to the best of my knowledge, ability, and experience. Also, that I am a qualified person to translate from Spanish into English, and from English into Spanish.

Executed this 21st day of September, 2006.

My Commission expires on 07/23/2007.

*Maria Martha Romero*

Notary Public


```
┌─────────────────────────────────────┐
│         MARIA MARTHA ROMERO          │
│         Commission # 1429326         │
│        Notary Public - California    │
│           Los Angeles County         │
│      My Comm. Expires Jul 23, 2007   │
└─────────────────────────────────────┘
```

?

Junio 17, 06

Hola Lino, te saludo con todo el cariño de siempre, deceando
que te encuentres gosando de una muy buena salud, Ya que
yo me encuentro vien gracias a Dios, y laverdad que
meda mucho gusto poder saber de nuebo de ti, creeme que
trate muchas veces de poder comunicarme contigo, pero
no tube suerte, escribi a la bieja direccion de tu hermana
y nadien me contesto, tambien le escribi al toño, tampoco
me contesto, pero lo bueno es que estes vien y eso me ase
sentirme vien, pues te cuento que mario salio en mayo del
año pasado, fijate que me echo de cabeza, ablo de mas y yo
no me he echo cargo de lo que el dijo, laverdad que aquel señor
hiso de agua y nos puso en mal, yo Ya able con mi consul de la
pricion y le dije que tu no fuistes quien disparo, fue el que
dejaron hir, pero el medijo que llamo lo pueden traer para atra
creeme que yo estoy muy enojado con aquel, nos metio en
este problema, y luego le seguimos el juego en no agarrar los
y 5 años que nos davan, ahora solo nos queda comprobarle a la
tabla que se equibocaron en dejar hir a mario, y me gustaria
que si tienes la prueba de la huella del gatillo, me gustaria
que mela mandaras, por que esa prueba note la pueden nega
por que fijate que yo acaba de hir a la tabla y me dijeron un
puño de cosas que yo ni encuenta, enfin que me dijeron que mario
avia dicho todo eso y yo nome hice cargo de lo que mario dijo
que tanto la conpuccion de la tabla que nose pucieron deacuerdo
y tubieron que perponerlo por lo que dijo mario, pero yo pienso
que vos tienes chansa de estar demandar al govierno, por que s
estan acusando de algo que Ya pucieron en peligro tu vida, s
que no es cierto de la acusacion, espero quent estes con los

# EXHIBIT E

12

1    directly to the District Attorney's office, and then

2    the District Attorney, at that point, can verify that

3    what they're saying in those letters are, in fact,

4    correct, and then we'll bring that up into the Board.

5    The only information that we are going to go by is

6    what's in the record at this point.   Yes, sir?

7            INMATE PORTILLO:  Excuse me a minute.   What

8    District Attorney are you --

9            PRESIDING COMMISSIONER BIGGERS:   The District

10    Attorney from LA County.

11            INMATE PORTILLO:  By the way, my sister, my

12    (inaudible) send a copy of this letter to the District

13    Attorneys.

14            PRESIDING COMMISSIONER BIGGERS:  That's fine.

15    But we, as the Board of Prison Terms, do not accept

16    anything that has to do with your trial that is not

17    coming down from the District Attorney's office and

18    also from the court of appeals.

19            ATTORNEY JUDD:  I believe the District Attorney

20    got --

21            PRESIDING COMMISSIONER BIGGERS:  Do you have a

22    copy of that letter, Mr. Smith?

23            DEPUTY DISTRICT ATTORNEY SMITH:  It's not in my

24    immediate file that I have for the Board.   It could be

25    somewhere else, but I don't see it initially, but if

26    it's a letter from the inmate's family or anyone else,

27    I can assure you that we probably would not consider it

13

1  because the police reports that were confessions by

2  both of his associates saying that he's the one that

3  did the shooting.  We have a confession from him to the

4  police saying that he did the shooting.  We have two

5  eyewitnesses that said he did the shooting.  Any

6  written statements from somebody years later trying to

7  help the inmate based upon statements that are not

8  corroborated, we wouldn't accept.  The record stands

9  for itself, and it's 100 percent accurate.  The inmate

10  did the shooting, and his codefendants said he did the

11  shooting, and we have two eyewitnesses.

12        PRESIDING COMMISSIONER BIGGERS:  All right.  I

13  understand that, Mr. Smith.  But supposedly, now, these

14  two letters are from the codefendants, and that's why I

15  said they need to go to the District Attorney's office

16  and they have to collaborate?

17        ATTORNEY JUDD:  As you hear, they're not going

18  to accept them.  There is no procedure, I suppose, for

19  these letters to get to the Board and to be considered.

20        PRESIDING COMMISSIONER BIGGERS:  Well --

21        ATTORNEY JUDD:  For what they're worth.

22        PRESIDING COMMISSIONER BIGGERS:  Well, he can

23  send them to the DA's office.  What he's saying right

24  now is if they're from family members, you know, that

25  there's a process.  I would send them to the DA's

26  office and let them decide.  Let them respond back to

27  you.  We are going to stand on the record.